IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03067-M

CHARLIE L. HARDIN,

        Plaintiff,

v.

TABOR CORRECTIONAL
INSTITUTION, et al.,

        Defendants.

ORDER

This cause is before the court on two pending motions. Mot. [D.E. 59]; Mot. [D.E. 67].

First, the court liberally construes plaintiff's instant self-styled "response to granted plaintiff's motion for default judgment [sic]," Mot. [D.E. 67], as a motion seeking reconsideration of the court's August 2, 2024, order, see United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (noting courts "classify *pro se* pleadings from prisoners according to their contents, without regard to their captions.").

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment[,]" but instead are "committed to the discretion of the district court." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003).

Because there has been no trial or change of law, and because plaintiff fails to show any clear error or manifest injustice in the August 2, 2024, order, cf. Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017), the court DENIES this motion for reconsideration [D.E. 67].

The court now considers defendants' motion for summary judgment. Mot. [D.E. 59]. For the reasons discussed below, the court grants this motion.

Relevant Procedural History:

On March 4, 2021, Charlie L. Hardin ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a letter that the court construed as a civil rights complaint under 42 U.S.C. § 1983. [D.E. 1, 4, 11]. Pursuant to an order of deficiency, Order [D.E. 3], plaintiff submitted a corrected complaint on the forms prescribed for use by the court, see [D.E. 9].

On November 22, 2021, the court: conducted its initial review of the corrected complaint; directed plaintiff to file a particularized complaint not later than December 7, 2021; and warned plaintiff that, if he failed to respond to this order within the time permitted, the court would dismiss the action without prejudice for failure to prosecute. Order [D.E. 16].

On December 13, 2021, because plaintiff had failed to respond to the November 22, 2021, order within the time permitted, the court dismissed the action without prejudice for failure to prosecute. Order [D.E. 17]. Judgment was entered on December 14, 2021. J. [D.E. 18].

On December 16, 2021, the court docketed plaintiff's unverified amended complaint that was signed on December 7, 2021. See Am. Compl. [D.E. 19].

On January 3, 2022, plaintiff appealed the dismissal of the action. See [D.E. 20, 21].

On March 29, 2022, in an unpublished, *per curiam* opinion, the United States Court of Appeals for the Fourth Circuit vacated and remanded for a determination whether plaintiff's amended complaint complies with the court's November 22, 2022, order. Op. [D.E. 24].

On April 21, 2022, the court directed the clerk to reopen the case, conducted its initial review, allowed Eighth Amendment failure-to-protect claims to proceed against Officer James Hunt, and case managers Linda York, Craig Kennedy, and Michael Ward (collectively, "defendants"), but dismissed all other claims and defendants. See Order [D.E. 27].

On September 14, 2022, defendants moved to dismiss the action for failure to state a claim, Mot. [D.E. 34], and filed a memorandum in support [D.E. 35].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court sent plaintiff a "Rule 12" letter notifying him about the motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 36].

On October 6, 2022, plaintiff moved for an extension of time to respond to defendants' motion to dismiss and filed a document in support. Mot. [D.E. 37]; Mot. Attach. [D.E. 37-1].

On October 14, 2022, the court: denied without prejudice defendants' motion to dismiss; denied without prejudice plaintiff's mooted motion for an extension of time to file a response to the motion to dismiss; stayed the action pending resolution of plaintiff's appeal in Hardin v. Hunt, No. 21-7195 (4th Cir.); and administratively closed the case. See Order [D.E. 38].

On August 28, 2023, plaintiff moved to lift the stay. Mot. [D.E. 40].

On September 27, 2023, the court found good cause shown to lift the stay, reopened the case, and allowed defendants until October 20, 2023, to answer the complaint. Order [D.E. 41].

On October 20, 2023, defendants timely answered the complaint. Answer [D.E. 42].

On October 24, 2023, the court entered a scheduling order. Order [D.E. 45].

On July 8, 2024, defendants filed this motion for summary judgment, Mot. [D.E. 59], with a memorandum and exhibits in support [D.E. 60], and a statement of material facts [D.E. 61].

On July 9, 2024, pursuant to a notice of deficiency, defendants filed an appendix [D.E. 63], and, pursuant to Roseboro, 528 F.2d at 310, the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 62].

On July 18, 2024, plaintiff moved for entry of default. Mot. [D.E. 64].

3

On August 2, 2024, the court denied plaintiff's motion for entry of default but directed defendants to re-send plaintiff the motion for summary judgment and supporting documents and allowed plaintiff until September 13, 2024, to file his response. Order [D.E. 66].

On August 12, 2024, plaintiff moved for reconsideration. Mot. [D.E. 67].

On September 9, 2024, plaintiff filed a response. See [D.E. 69].

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Plaintiff's surviving Eighth Amendment failure-to-protect claims are: 1) on December 12, 2019, at Tabor C.I., defendants "allowed gang bangers to try and stab plaintiff"; and 2) Hunt later

4

endangered his safety at Tabor C.I. by calling him a child molester and "telling a block full of gangbangers that plaintiff stabbed their big homie [sic]." See Am. Compl. [D.E. 19] at 5–9. Plaintiff contradictorily alleges both that he exhausted his claims and that defendants "obstructed the grievance policy to stop [him] from filing this claim [sic]." See id. at 8.

Defendants argue that: plaintiff failed to exhaust administrative remedies as to his claims; plaintiff cannot satisfy the objective or subjective requirements for his failure-to-protect claims; or, alternatively, they are entitled to qualified immunity. See Defs.' Mem. [D.E. 60] at 9–12.

Plaintiff has not offered affidavits, declarations, or other competent summary judgment evidence in opposition to defendants' motion for summary judgment despite receiving adequate notice under Roseboro and having an opportunity to do so. See Celotex, 477 U.S. at 324; cf. Richardson v. Clarke, 52 F.4th 614, 623–24 (4th Cir. 2022); Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021). Instead, plaintiff merely relies upon the allegations in his unverified complaint and his unsworn responses. Cf. Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

In his unsworn responses, plaintiff argues he exhausted grievances as to his claims. See [D.E. 67] at 1–2 (arguing that, as demonstrated in Hardin v. Ishee, et al., No. 5:20-CT-3122-BO (E.D.N.C.), grievances related to his claims were exhausted on Oct. 6 and 27, and Dec. 22, 2020); [D.E. 69] at 1–2 (generally arguing that he exhausted his administrative remedies as to his claims).

The Prison Litigation Reform Act ("PLRA") states, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits

5

about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation, alteration, and internal quotation marks omitted).

PLRA administrative exhaustion, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). Grievance procedure is not "available" when: 1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see also Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Failure to exhaust administrative remedies is an affirmative defense that a defendant generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017).

The North Carolina Department of Public Safety ("DPS"), now known as the North Carolina Department of Adult Correction ("DAC"), has a three-step inmate grievance Administrative Remedy Procedure ("ARP"). See Moore, 517 F.3d at 721–22; see also Harris v. Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) (noting PLRA exhaustion requires North Carolina inmates to complete all three steps of the ARP).

6

The court has reviewed plaintiff's Step-3 grievances for the relevant timeframe and finds that, despite exhausting claims that Hunt endangered his safety by calling him a child molester and "telling a block full of gangbangers that plaintiff stabbed their big homie [sic]," plaintiff did not exhaust any claims regarding defendants' alleged failure to protect him from the December 12, 2019, stabbing incident at Tabor C.I. See Defs.' Mem. Attach., Ex. B, [D.E. 60-3] at 1–5 (Feb. 2, 2021, Step-3 response to a Dec. 22, 2020, grievance regarding medical issues with his shoulder); id., Ex. C, [D.E. 60-4] at 1–4 (Feb. 22, 2021, Step-3 response to a Jan. 8, 2021, grievance seeking shoulder surgery); id., Ex. D, [D.E. 60-5] at 1–6 (May 25, 2021, Step-3 response to an Apr. 13, 2021, grievance asserting, inter alia, that Hunt endangered his safety by telling inmates plaintiff is a child molester and that plaintiff "checked off the year after stabbing several of the inmates' big homie [sic]"); id., Ex. E, [D.E. 60-6] at 1–7 (June 7, 2021, Step-3 response to a May 25, 2021, grievance asserting, inter alia, Hunt is endangering plaintiff's safety by "telling a block full of gangbangers that plaintiff stabbed their big homie [sic]"); id., Ex. F, [D.E. 60-7] at 1–4 (Aug. 3, 2021, Step-3 response to a June 8, 2021, grievance asserting that his inmate trust fund account was overdrawn); id., Ex. G, [D.E. 60-8] at 1–5 (Nov. 16, 2021, Step-3 response to a Sept. 1, 2021, grievance asserting, inter alia, delay in return of his property after a pepper spray incident at Pasquotank C.I.); see also Hardin v. Ishee, et al., No. 5:20-CT-3122-BO (E.D.N.C. May 14, 2021), Defs.' Mem. Attach., Ex. 2 [D.E. 44-1] at 15–18 (Dec. 31, 2019, Step-3 response to a Dec. 4, 2019, grievance as to meal trays being served unsealed); id., Ex. 3 [D.E. 44-1] at 19–23 (Jan. 29, 2020, Step-3 response to a Dec. 17, 2019, grievance as to a nurse refusing to give medication without an ID, using abusive language, and refusing to give her name); id., Ex. 4 [D.E. 44-1] at 24–31 (Mar. 18, 2020, Step-3 response to a Feb. 18, 2020, grievance as to lost sneakers); id., Ex. 5 [D.E. 44-1]

7

at 32–36 (Aug. 18, 2020, Step-3 response to a July 2, 2020, grievance as to a dirty meal tray); id., Ex. 6 [D.E. 44-1] at 37–42 (Oct. 6, 2020, Step-3 response to a Sept. 17, 2020, grievance asserting, *inter alia*, Hunt endangered his safety by telling "a block full of [illegible] that plaintiff stabbed their big homie [sic]," and seeking a transfer); id., Ex. 7 [D.E. 44-1] at 43–46 (Oct. 27, 2020, Step-3 response to an Oct. 2, 2020, grievance regarding segregation placement and seeking a transfer); [D.E. 44-1] at 47–58 (Dec. 22, 2020, Step-3 response to a Nov. 13, 2020, grievance regarding segregation placement and seeking a transfer).

Plaintiff's unverified complaint and unsworn responses, without more, fail to show that the ARP was "unavailable" to him within the meaning of Ross, 578 U.S. at 643–44, and are insufficient to defeat defendants' motion for summary judgment, see Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (noting, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him" (citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (finding, if a defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam)

(unpublished) (noting a plaintiff bears the burden of showing the unavailability of administrative remedies (citing Moore, 517 F.3d at 725)); cf. Griffin, 56 F.4th at 335–39.

Considering the record evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendants have met their burden of showing the absence of a genuine issue of material fact regarding his failure to exhaust administrative remedies for his failure-to-protect claim against defendants as to the December 12, 2019, stabbing incident, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, whereas, regarding the alleged unavailability of the ARP, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Thus, defendants are entitled to summary judgment as to this failure-to-protect claim, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85, which the court dismisses without prejudice for failure to exhaust administrative remedies, see Moss, 19 F.4th at 623 n.3 (collecting cases).

Next, plaintiff's exhausted claims against Hunt fail on the merits. To make out a *prima facie* case that prison conditions violate the Eighth Amendment, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). "[T]he first showing requires the court to determine whether the deprivation of the basic human need was objectively sufficiently serious." Id. (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted). To satisfy the second, subjective showing, a plaintiff must prove the official acted with deliberate

9

indifference. Id.; see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (citation and quotation marks omitted). An Eighth Amendment failure-to-protect claim "requires proof of two elements to establish deprivation of a constitutional right." Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014). The prisoner first "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" Id. (citation omitted); see also De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – *i.e.*, a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective prong of Eighth Amendment conditions-of-confinement claims). Second, the prisoner must show that the prison official had a "sufficiently culpable state of mind," *i.e.*, a "deliberate indifference to inmate health or safety." Danser, 772 F.3d at 346–47.

A prison official, however, will not be liable for a failure to protect an inmate "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Failure to alleviate a significant risk of harm that an official "should have perceived but did not" also does not violate a plaintiff's constitutional rights. Id. at 838. In short, to succeed on an Eighth Amendment failure-to-protect claim, a prisoner must show: 1) he was incarcerated under conditions posing a

10

substantial risk of serious harm; 2) the official was deliberately indifferent to that substantial risk to his health and safety; and 3) the official's deliberate indifference caused the harm. Id. at 834.

As noted above, plaintiff has not offered affidavits, declarations, or other competent summary judgment evidence in opposition to defendants' motion for summary judgment, see Celotex, 477 U.S. at 324; cf. Pledger, 5 F.4th at 525–27, but he instead relies upon the allegations in his unverified complaint and his unsworn responses, cf. Goodman, 986 F.3d at 498.

Here, because plaintiff provides no proof of any serious or significant physical or emotional injury due to Hunt's alleged statements, and because his bare allegations fail to show that Hunt knew of and disregarded an objectively serious risk of harm, or that Hunt's deliberate indifference caused such harm, these allegations satisfy neither the objective nor the subjective elements of a viable § 1983 failure-to-protect claim. See Farmer, 511 U.S. at 834; Danser, 772 F.3d at 346–47; De'Lonta, 330 F.3d at 634; Strickler, 989 F.2d at 1381 ("The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment."); see also Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished) ("prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"); Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (per curiam) (unpublished) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." (citation omitted)).

11

Considering the record evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendants have met their burden of showing the absence of evidence to support plaintiff's remaining failure-to-protect claims against Hunt, Celotex, 477 U.S. at 325, but plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted); see Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Wai Man Tom, 980 F.3d at 1037; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting, "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)). Accordingly, defendants are entitled to summary judgment, see Anderson, 477 U.S. at 249, and the court dismisses these remaining Eighth Amendment failure-to-protect claims against Hunt.

Alternatively, defendants, as government officials, are entitled to qualified immunity from civil damages when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, defendants are entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations and quotations omitted).

12

Here, because plaintiff has not shown that defendants' alleged actions prior to the December 12, 2019, Tabor C.I. stabbing incident or Hunt's alleged subsequent statements violated his constitutional rights, defendants also are entitled to qualified immunity. See id. at 743 ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("The *Harlow* standard is specifically designed to . . . permit the resolution of many insubstantial claims on summary judgment . . . .'"); King v. Riley, 76 F.4th 259, 266 & n.7 (4th Cir. 2023) (noting a "known and substantial" risk of inmate-on-inmate violence "must be more specific than 'the general risks that all the inmates posed to one another and prison officials,'" and "even if the risk of inmate violence was substantial and [defendant] knew that—[plaintiff] needs precedent establishing that [defendant's] efforts to mitigate that . . . were constitutionally deficient." (citation omitted)); see also Hardin v. Turley, No. 5:22-CT-03255-BO, 2024 WL 5364492, at *6 (E.D.N.C. Aug. 27, 2024), aff'd, No. 24-7021, 2025 WL 325648 (4th Cir. Jan. 29, 2025).

## Conclusion:

For the above reasons, the court: DENIES plaintiff's motion for reconsideration [D.E. 67]; GRANTS defendants' motion for summary judgment [D.E. 59]; DISMISSES the complaint on the grounds discussed above; and DIRECTS the clerk to close the case.

SO ORDERED this 18th day of March, 2025.

*Richard E. Myers II*
RICHARD E. MYERS II
Chief United States District Judge

13